# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

PHILLIP C. RUEHL,

        Plaintiff,

    -vs-

        Case No. 10-C-182

AM GENERAL LLC,

        Defendant.

## DECISION AND ORDER

The plaintiff, Phillip Ruehl ("Ruehl"), consulted with the defendant, AM General LLC, about a project to upgrade frame rails for AM General's Humvee military vehicle. Both parties filed patent applications for the resulting frame rail invention. On February 10, 2010, Ruehl filed this action against AM General in state court, seeking a declaration that the invention does not belong to AM General. AM General removed and now moves to dismiss for improper venue. In the alternative, AM General moves to transfer this matter to federal court in Indiana. For the reasons that follow, this matter will be dismissed.

Ruehl was employed by A.O. Smith and Tower Automotive as an automotive frame chassis engineer for over thirty years. Since the early 1980s, AM General has manufactured a High Mobility Multi-Purpose Wheeled Vehicle (the Humvee) for the United States Military and for the militaries of friendly countries around the world. Ralf Pionke worked with Ruehl at A.O. Smith at Tower Automotive. Pionke left Tower Automotive in 2000 and eventually joined AM General.

In November 2004, Pionke contacted Ruehl to inquire if Ruehl was interested in consulting with AM General on a project to upgrade the frame rails for its Humvee line of trucks. Pionke described the frame rail project objectives to Ruehl and sent Ruehl drawings showing the current side rail design. From December 2004 through February 2005, Ruehl studied the drawings in light of the objectives described by Pionke. Ruehl was not under contract with AM General and was not being paid or otherwise compensated by AM General. Ruehl began to consider ways to meet AM General's objectives so that he could add value if and when AM General decided it wanted to retain him as a consultant. AM General was never invoiced and never paid Ruehl for the work he did during this preparation period. AM General specifically told Ruehl that he would not be "on board" and under contract until he had met with the representatives of AM General and signed additional documents at AM General's Livonia, Michigan facility.

On February 26, 2005, Ruehl received from AM General a purchase order dated February 24, 2005 for "engineering support for HMMWV frame rail feasibility study." Under the purchase order, AM General asked Ruehl to provide engineering support for a feasibility study. Ruehl signed the purchase order.

On March 7, 2005, with his Invention already conceived, design in hand and sample ordered, Ruehl attended his first meeting with AM General, a meeting which AM General referred to as the "kick off" meeting. At the kickoff meeting, Ruehl and AM General signed a Mutual Confidentiality Agreement, drafted by AM General. The Mutual Confidentiality Agreement provided that all confidential information disclosed by Ruehl to AM General and

by AM General to Ruehl would "remain the property of the Disclosing Party." "Confidential Information" was defined in the agreement as "ideas, concepts, plans, . . . drawings, . . . products, processes." The agreement also stated that nothing shall be "construed as granting or conferring to Receiving Party any patent rights or licenses from Disclosing Party either expressly or by implication."

The Mutual Confidentiality Agreement also includes a forum selection clause, which states that the "Agreement shall be governed by and construed in accordance with the laws of Indiana without reference to conflicts of law principles, and the parties agree to be subject to the jurisdiction of the courts of Indiana. Any legal action to enforce this Agreement shall be brought in St. Joseph County, Indiana." The Northern District of Indiana, South Bend Division, is located in St. Joseph County.

A motion to dismiss for improper venue based on a forum selection clause is properly brought under Fed. R. Civ. P. 12(b)(3). Forum selection clauses are presumptively valid and enforceable. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 13 (1972). A forum selection clause should be enforced unless it is unreasonable or the product of fraud or undue influence. *Northwestern Nat'l Ins. Co. v. Donovan*, 916 F.2d 372, 375-76 (7th Cir. 1990). When venue is challenged on the basis of a forum selection clause, the plaintiff bears the burden of establishing that the venue he has chosen is proper and that the forum-selection clause is unenforceable. *DeJohn v. The .TV Corp. Intern.*, 245 F. Supp. 2d 913, 920 (N.D. Ill. 2003).

-3-

Case 2:10-cv-00182-RTR   Filed 07/02/10   Page 3 of 5   Document 19

Ruehl argues that there is "no good reason" for this lawsuit to be adjudicated in Indiana. Ruehl ignores the fact that he signed the confidentiality agreement which included the forum selection clause, and he doesn't seriously argue that this was the result of fraud or undue influence. Ruehl claims that it would be inconvenient for him to litigate in Indiana, but he cannot overcome a forum selection clause on that basis. *See, e.g., DeJohn* at 921 (party must show that he will be "deprived of his day in court" as the result of the "grave inconvenience or unfairness of the selected forum"); *Donovan*, 916 F.2d at 378 ("the signing of a valid forum selection clause is a waiver of the right to move for a change of venue on the ground of inconvenience"). Ruehl tries a different strategy by arguing that the forum selection clause is inapplicable because he is not trying to enforce the agreement with the forum selection provision. However, Ruehl concedes that he will rely upon the confidentiality agreement to establish that the alleged assignment to AM General in the purchase orders was invalid. The provisions of this agreement form the basis of Ruehl's claim that he retained his rights in the Invention. In that respect, Ruehl's action is a "legal action to enforce" the agreement under the terms of the forum selection clause. *Cf. Omron Healthcare, Inc. v. Maclaren Exports Ltd.*, 28 F.3d 600, 603 (7th Cir. 1994) ("All disputes the resolution of which arguably depend upon the construction of an agreement 'arise out of' that agreement" for purposes of a forum selection clause); *Pendleton Enters., Inc. v. Iams Co.*, 851 F. Supp. 1503, 1505 (D. Utah 1994) ("Where enforcement of a provision . . . is clearly a defense to a claim, that claim should be considered to fall within the scope of a

-4-

forum-selection clause that applies to any action to enforce the provisions of the agreements. Otherwise, the intent of the clause might be defeated simply by winning a race to court").

In lieu of dismissal, the Court could transfer this matter directly to the Northern District of Indiana. 28 U.S.C. § 1406(a) ("The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought"). The Court will not do so because the forum selection clause is enforceable and it clearly applies to Ruehl's claims in this case. Therefore, the Court is left with the impression that Ruehl filed this matter in Wisconsin either to harass AM General or in a stubborn attempt to proceed in a forum to which he is not entitled. Dismissal is the appropriate result. *See Continental Ins. Co. v. M/V Orsula*, 354 F.3d 603, 608 (7th Cir. 2003) (transfer not in interests of justice where there is "nothing obscure" about the proper forum).

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT** AM General's motion to dismiss [D. 10] is **GRANTED**, and this matter is **DISMISSED** for improper venue.

Dated at Milwaukee, Wisconsin, this 2nd day of July, 2010.

              **SO ORDERED,**

              *s/ Rudolph T. Randa*
              **HON. RUDOLPH T. RANDA**
              **U.S. District Judge**